[No. 14687.   Department Two.   June 4, 1918.]

## In the Matter of the Estate of CARL EICHLER. MARIE PREUSS, *Appellant*, v. ANNA BERG, *as Executrix, Respondent*.[1]

APPEAL—RECORD—EXHIBITS.   Where a statement of facts is struck out, the court cannot consider exhibits which are made a part of the statement.

WILLS—CONTESTS—ABUSED DISCRETION—STATUTES.   Under Laws 1917, p. 648, § 19, substituting a discretionary power to award costs in will contests for the arbitrary rule of Rem. Code, § 1313, requiring costs to be awarded against an unsuccessful contestant, it is an abuse of discretion to award costs against a contestant who made out a *prima facie* showing of probable cause for contesting a will, it being made to appear that the testator had executed a prior will in favor of contestant and had probably been unduly influenced to execute a later will.

Appeal from a judgment of the superior court for Mason county, D. F. Wright, J., entered August 7, 1917, dismissing a will contest, after a trial to the court.   Modified.

*Adolph Loewe,* for appellant.

*T. M. Vance* and *R. A. Lathrop,* for respondent.

CHADWICK, J.—The statement of facts was heretofore stricken and we cannot inquire into the merit of the court's decree.   We are not unmindful of the contention of the appellant that we may nevertheless consider the exhibits, and which in themselves will show that the decree of the court is ill founded in fact.   It is true that the exhibits were not stricken *eo nomine,* but inasmuch as the exhibits are made by statute and the certificate of the trial judge a part of the statement of facts, it follows that they went out under our previous order.

[1]Reported in 173 Pac. 435.

However, the question whether the court erred or abused its discretion in taxing costs and an attorney's fee of $400 against the contestant is still in the case.

Respondent contends that the attorney's fee is not disproportionate or excessive when measured by the value of the estate, which was appraised at $5,758. This argument would be attractive if the payment was to be made out of the estate and to counsel who had successfully resisted the contest. But the case presents itself from another angle. The statute under which the court taxed costs and attorney's fees against the unsuccessful contestant is:

"If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court. If the will be sustained, the court may assess costs against the contestant, which costs may in the discretion of the court include a reasonable attorney's fee." Laws of 1917, ch. 156, p. 648, § 19.

The former statute is as follows:

"The fees and expenses shall be paid by the losing party. If the probate be revoked or the will annulled, the party who shall have resisted such revocation shall pay the cost and expenses of proceedings out of the property of the deceased." Rem. Code, § 1313.

In *Jasinto v. Hamblen,* 79 Wash. 590, 140 Pac. 677, the court met the insistence of counsel that an allowance for attorney's fees and costs to nonsuccessful contestants should be paid out of the estate, by quoting the statute and saying that there was no provision of the code under which the costs and expenses of an unsuccessful contest could be paid out of the estate. The court observed that it was of opinion that neither the law nor good conscience demanded that the unsuccessful contest of a will should result in costs and counsel fees against the estate, advancing the reason that such a ruling would, in effect, place a reward upon the con-

test of every will disposing of large estates. See, also, *Hunt v. Phillips,* 34 Wash. 362, 75 Pac. 970; *In re Rathjens' Estate,* 45 Wash. 55, 87 Pac. 1070. There is much merit in the observance of the court, but it is evident that the legislature was not impressed with the reasons given other than its quotation of the statute, for it is evident that that body foresaw the possibility of a contest that might be meritorious and which in justice the contestant would have a right to wage, although unsuccessful in the end. This case would fall in the latter class, for here we have a situation made entirely by the deceased person. He made two wills, one sustained by the declarations and habit of years and the tie of blood, the other by no sustaining grace other than the cold writing on the page.

To measure the present law we must consider the old law, for a presumption carries in all changes in statute law that the legislature had in mind a mischief (a mischief of various rules, 40 Cyc. 1362), and a remedy, and we must attribute a motive for the striking out of the arbitrary provisions of the old law and a substitution of a discretionary power to award costs and attorney's fees unhampered by any restrictions within the realm of reasonable discretion.

Counsel for respondent cite *In re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385, and *In re Statler's Estate,* 58 Wash. 199, 108 Pac. 433, but they go but a little way, if at all, to sustain their position, for in each of those cases the allowances were made out of the estate. They were not charged as a money judgment against an unsuccessful contestant.

So that the only question for us is whether the trial judge abused his discretion. We are convinced that he did, and for two reasons. The charge was made as costs against contestant as a losing party, which is primarily unsound, and contestant made a *prima facie*

showing of probable cause for contesting the will. It appears from the petition that appellant is a niece of the deceased, Eichler; that deceased had often expressed an intention of making her his sole heir, and to that end had prepared a will as early as July 22, 1913, in which he had devised all of his estate, saving two legacies of $1 each, to her, and to avoid all question or chance of loss had put the will in her hands for safe-keeping; that he had an affection for his niece which was more than casual, for he had directed that his "body be decently buried under the direction of my beloved niece, Marie Preusse." This will was proposed in the petition for contest. It is further alleged that, in 1916 and shortly before the execution of the later will, Eichler was living alone, was aged and infirm, sick in body and mind, and subject to undue influence and coercion; that the respondent occasionally attended him; that he was eccentric, quarrelsome, suspicious and easily frightened and intimidated; and that, because of his helplessness and dependence, respondent, a stranger to his blood, with mercenary intent, prevailed upon him to reverse his avowed intention to leave his property to appellant and to make her the devisee of the great bulk of his property. It is further alleged that, a short time thereafter and while sick at a hospital in Seattle, where he had gone for surgical treatment, he caused a letter to be written to the scrivener and custodian of the later will at Shelton, directing him to send it to him at Seattle, and that the will did so arrive in due course of mail on the morning after the night of his death.

Surely this is a showing of probable cause—a color of title, if you please—and to penalize appellant for daring to ask an adjudication upon a subject-matter that in right and conscience is probably her own, would be to do a great wrong and tend to discourage the as-

sertion of legitimate claims.  We think our statute was intended to cover just such cases as we have here, and that the exercise of a sound discretion demands that the costs be taxed against the estate and that no attorney's fees be charged to appellant.

The cause is remanded with instructions to modify the decree accordingly.  Appellant will recover her costs on appeal.

HOLCOMB, MOUNT, and MACKINTOSH, JJ., concur.